UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND


UNITED STATES OF AMERICA,


                    Plaintiff,


vs.                                    Case No. RDB-11-547


JOHN HENRY ADAMS,


                    Defendant.

----------------------------------------------------

**February 22, 2012**

**Transcript of Proceedings**
**CHANGE OF PLEA**


**Before The Honorable RICHARD D. BENNETT**
**United States District Judge**

APPEARANCES:

For the Plaintiff:    Christopher Romano
                      James Harding
                      Assistant U.S. Attorney

For the Defendant:    Paul Hazlehurst




Proceedings recorded by mechanical stenography,
transcript produced with computer-aided
transcription.

2

1                    P R O C E E D I N G S

2              THE COURT:  Call the case of United

3    States versus John Henry Adams, criminal number

4    RDB-11-0547.  This matter is being called for an

5    arraignment and guilty plea to counts one and two of

6    a two count information charging the defendant with

7    murder in aid of racketeering in violation of 18

8    United States Code, Section 1959A.  This matter is

9    under seal and the courtroom has been secured and the

10   transcript shall be sealed and all precautions shall

11   be taken with respect to the necessary sealing here.

12   And I've signed, there is a sealing order which I've

13   signed yesterday sealing certain documents and we'll

14   go over some of these sealing orders in a moment.

15              If counsel would identify themselves for

16   the record, please.

17              MR. ROMANO:  Representing the United

18   States are Assistant U.S. Attorney Robert Harding and

19   Christopher Romano.  And, Your Honor, just by way of

20   a correction actually, the defendant will be pleading

21   guilty to counts five and eleven of the indictment.

22   I believe what Your Honor had was the criminal

23   information which was a draft.  But the case number

24   that Your Honor actually called, which is RDB

25   11-0547, is the indictment in this case and the

3

1   counts to which Mr. Adams will be pleading guilty are

2   actually counts five and eleven.

3           THE COURT:  All right.  Because I'm

4   looking here --

5           MR. ROMANO:  I apologize for the

6   confusion.

7           THE COURT:  That's fine.  So there is no

8   two count information that's being filed.  For the

9   record, counsel for the defendant.

10          MR. HAZLEHURST:  Good afternoon, Your

11  Honor.  Paul Hazlehurst on behalf plaintiff Adams.

12          THE COURT:  And you're acting as court

13  appointed counsel, is that correct?

14          MR. HAZLEHURST:  I am.

15          THE COURT:  And good afternoon to you,

16  Mr. Harding, as well.

17          And good afternoon, Mr. Adams.

18          THE DEFENDANT:  Good afternoon.

19          THE COURT:  Mr. Adams, let me make sure

20  you understand you're represented by court appointed

21  counsel in this case in light of the fact that the

22  Public Defender's Office of this district is

23  representing another defendant apparently to whom.

24  Mr. Hazlehurst is among a select group of lawyers who

25  is deemed qualified to be able to handle federal.  He

4

1      is in fact a former Assistant Federal Public Defender

2      and he's handled these cases for years.  And I want

3      to thank you, Mr. Hazlehurst, for your service to the

4      court in that regard.

5                  MR. HAZLEHURST:  You're welcome, Your

6      Honor.  Thank you.

7                  THE COURT:  The guilty plea will to be

8      counts five and eleven, five and eleven of the

9      indictment in this case, again, charging the

10     defendant with two counts of murder in aid of

11     racketeering, correct, Mr. Romano?

12                 MR. ROMANO:  That is correct, Your Honor.

13                 THE COURT:  All right.  And so with that,

14     we are ready to proceed.

15                 Mr. Adams, let me indicate to you that

16     very definite precautions are being taken here to

17     seal this matter.  This is not a matter that will be

18     publicly known, known to the public obviously in

19     terms of the members of the public being aware of

20     this.  There's not going to be any docket entries

21     that reflect it and all precautions are being taken,

22     do you understand that?

23                 THE DEFENDANT:  Yes, sir.

24                 THE COURT:  If for any reason you have

25     any concern over precautions being taken in this

5

1    case, you contact your attorney, Mr. Hazlehurst, do

2    you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  And the record will reflect

5    that we have the U.S. Marshals here who provide

6    security and sometimes lunch for members of the court

7    staff, marshal from a proceeding earlier this

8    morning.  And I see that we have law enforcement

9    personnel, correct, Mr. Romano, who are here in the

10   courtroom?

11             MR. ROMANO:  We do, Your Honor.

12             THE COURT:  But the courtroom was been

13   secured and we are now proceeding.  And with that,

14   make a change in my notes here.

15             On how many counts of the indictment was

16   Mr. Adams originally charged, Mr. Romano?  Do you

17   know?

18             MR. ROMANO:  Your Honor, I believe he was

19   charged --

20             THE COURT:  In count nine, I know.

21             MR. ROMANO:  -- was charged in count one,

22   he was charged in counts two, three, five --

23             THE DEPUTY CLERK:  Seven, 8, 9, 10, 11,

24   12 and 27.

25             MR. ROMANO:  -- 7, 8, 9, 10, 11 and count

1     27, Your Honor.

2              THE DEPUTY CLERK:  Count 12 also.

3              MR. ROMANO:  Count 12 also.

4              THE COURT:  And obviously we'll be

5     getting to this point, but with respect to those

6     charges, with the defendant pleading guilty to counts

7     five and eleven, when his time comes for sentencing

8     those other charges will be dismissed by the

9     government, is that correct?

10              MR. ROMANO:  That is correct, Your Honor.

11              THE COURT:  All right.  So with that we

12     are ready to proceed with the arraignment in this

13     case.  And this is a cooperation agreement, correct,

14     Mr. Romano?

15              MR. ROMANO:  It is, Your Honor.

16              THE COURT:  Correct, Mr. Hazlehurst?

17              MR. HAZLEHURST:  Yes, Your Honor.

18              THE COURT:  So with that, we are ready to

19     proceed.

20              Mr. Clerk, if you will administer the

21     oath.

22              (DEFENDANT SWORN.)

23              THE DEPUTY CLERK:  State your name for

24     the record.

25              THE WITNESS:  John Henry Adams.

7

```
 1                    THE DEPUTY CLERK:  Your age?

 2                    THE DEFENDANT:  25.

 3                    THE DEPUTY CLERK:  The year of your

 4       birth?

 5                    THE DEFENDANT:  1986.

 6                    THE DEPUTY CLERK:  1986?

 7                    THE DEFENDANT:  Yes, sir.

 8                    THE DEPUTY CLERK:  Have you been

 9       furnished with a copy of the indictment by the

10       Assistant United States Attorney?

11                    THE DEFENDANT:  Yes.

12                    THE DEPUTY CLERK:  Have you read the

13       indictment?

14                    THE DEFENDANT:  Yes.

15                    THE DEPUTY CLERK:  Do you understand the

16       charges which have been placed against you?

17                    THE DEFENDANT:  Yes, sir.

18                    THE DEPUTY CLERK:  Mr. Hazlehurst, you

19       have been appointed to represent the defendant?

20                    MR. HAZLEHURST:  Yes.

21                    THE DEPUTY CLERK:  Are you satisfied that

22       the defendant understands what he's been charged

23       with?

24                    MR. HAZLEHURST:  I am.

25                    THE DEPUTY CLERK:  Mr. Adams, you've been
```

8

1    charged in counts one, two, three, five, seven,

2    eight, nine, ten, eleven, 12 and 27 of the

3    indictment.  How do you wish to plead?

4                 THE DEFENDANT:  Guilty as to counts five

5    and eleven.

6                 THE DEPUTY CLERK:  And not guilty as to

7    counts one, two, three, seven, eight, nine, ten, 12

8    and 27?

9                 THE DEFENDANT:  Yes.

10                THE DEPUTY CLERK:  Thank you.

11                THE COURT:  All right.  The plea is

12   guilty to counts five and eleven of the indictment,

13   is that correct, Mr. Adams?

14                THE DEFENDANT:  Yes.

15                THE COURT:  Do you understand, sir, that

16   you're now under oath?

17                THE DEFENDANT:  Yes, sir.

18                THE COURT:  And do you understand that if

19   you were to answer any of my questions falsely, those

20   answers could later be used against you in another

21   prosecution for perjury or for making false

22   statements?

23                THE DEFENDANT:  Yes, sir.

24                THE COURT:  So it's very important you

25   answer my questions truthfully.  If you don't

9

1    understand a question, we'll stop, we're not in any

2    hurry, and we'll make sure that you have an

3    opportunity to talk to Mr. Hazlehurst to clarify any

4    question that you don't understand.

5              How far did you get in school, Mr. Adams?

6              THE DEFENDANT:  Ninth grade.

7              THE COURT:  And can you read and write

8    the English language?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And have you been treated

11   recently for any mental illness or addiction to

12   narcotic drugs of any kind?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And what have you been

15   treated for?

16             THE DEFENDANT:  They didn't tell me.

17             THE COURT:  Is there -- do you have an

18   addiction to any particular drug or addiction issues

19   in the past?

20             THE DEFENDANT:  No.  Just drinking,

21   that's pretty much it.

22             THE COURT:  Are you on any kind of

23   medication today?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  What kind of medication are

1      you on?

2                   THE DEFENDANT:  BuSpar, Depakote and

3      Thorazine.

4                   THE COURT:  Are they having any kind of

5      negative effect upon you so that you don't understand

6      the nature of the proceedings today?

7                   THE DEFENDANT:  No.

8                   THE COURT:  And, Mr. Hazlehurst, have you

9      taken certain steps to insure that your client

10     understands the nature of the proceedings here today?

11                  MR. HAZLEHURST:  I have, Your Honor.

12     Just for the record, I spent since approximately 1:30

13     this afternoon before the court appearance with Mr.

14     Adams and it's my belief, based on my interactions

15     with him, that he is competent to proceed at this

16     time.

17                  THE COURT:  All right.  And you've

18     previously dealt with him and been able to gauge his

19     competence to proceed with this guilty plea today,

20     even prior to today, is that correct?

21                  MR. HAZLEHURST:  I have, Your Honor.

22     I've spent many, many hours with Mr. Adams.

23                  THE COURT:  And with respect to the

24     effect of the medication upon you, Mr. Adams, again,

25     this medication does not have any negative effect on

1      you?

2                  THE DEFENDANT:  No.

3                  THE COURT:  Are you feeling all right?

4                  THE DEFENDANT:  Yes, sir.

5                  THE COURT:  I understand you're

6      apprehensive.

7                  THE DEFENDANT:  Yes, sir.

8                  THE COURT:  Have you received the

9      indictment in which you've been originally charged in

10     counts one, two, three, five, seven, eight, nine,

11     ten, eleven, 12 and 27?

12                 THE DEFENDANT:  Yes, sir.

13                 THE COURT:  And have you fully discussed

14     these charges with your attorney, Mr. Hazlehurst?

15                 THE DEFENDANT:  Yes, sir.

16                 THE COURT:  Have you discussed the whole

17     situation with him?

18                 THE DEFENDANT:  Yes, sir.

19                 THE COURT:  Including the evidence in the

20     case, witnesses you might want to call and the

21     possibility of a trial, and even an appeal if you

22     were found guilty in this case along with many of the

23     other co-defendants?

24                 THE DEFENDANT:  Yes, sir.

25                 THE COURT:  And are you fully satisfied

1      with Mr. Hazlehurst and his representation and the

2      advice which he's given you?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  Tell me in your own words the

5      reason for your satisfaction.

6                    THE DEFENDANT:  Just --

7                    THE COURT:  Has he thoroughly gone over

8      all the evidence with you?

9                    THE DEFENDANT:  Yes, he does do that.

10     And any questions I have, he's truthful with me.

11     He's there for me whenever I need him.

12                   THE COURT:  And is there anything you've

13     asked him to do which he's not done?

14                   THE DEFENDANT:  No.

15                   THE COURT:  The court has been advised

16     that there's a plea agreement in this case which is

17     set forth in a letter of April 11, 20 -- is this 2011

18     or 2012?

19                   MR. ROMANO:  2011, Your Honor.  We're

20     still not quite to April of 2012.

21                   THE COURT:  I wanted to make sure it

22     wasn't a typo or not.

23                   MR. ROMANO:  No, sir.

24                   THE COURT:  Ten months ago.

25                   The court has been advised there's a plea

1      agreement in this case which has been set forth in a

2      letter of April 11, 2011 from Assistant U.S. Attorney

3      Robert Harding to your attorney, Paul Hazlehurst.

4      The original of that letter has been marked as

5      government exhibit 1.  And Mr. Hazlehurst, if you'll

6      approach the clerk's desk, please, to retrieve that.

7                  Looking, first of all, at the original

8      letter, Mr. Adams, looking first of all at page 11 of

9      the plea agreement letter itself, is that your

10     signature there dated May 10, 2011?

11                 THE DEFENDANT:  Yes, sir.

12                 THE COURT:  And did you have an

13     opportunity to review the letter with Mr. Hazlehurst

14     before you signed it?

15                 THE DEFENDANT:  Yes, sir.

16                 THE COURT:  And that is at the end of the

17     statement of facts, attachment A, looking first at

18     page six, is that your signature there?

19                 THE DEFENDANT:  Yes, sir.

20                 THE COURT:  And then at page, as I've

21     said, at page 11 at the end of the attachment A, the

22     statement of facts, is that your signature there as

23     well?

24                 THE DEFENDANT:  Yes, sir.

25                 THE COURT:  And then finally, and I'll be

14

1    going over this with you, the sealed supplement.

2    Although everything here is being sealed today, the

3    sealed supplement to the plea agreement, is that your

4    signature there on page 17?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  And these are the same

7    agreements which you signed, is that correct?

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT:  And did you have an

10   opportunity to read and discuss the plea agreement,

11   attachment A, the agreed statement of facts, as well

12   as the sealed supplement with Mr. Hazlehurst before

13   you signed it?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  And did anybody make any

16   other promises or assurances to you in an effort to

17   induce you to plead guilty in this case other than

18   what is set forth in the letter, the statement of

19   facts, and the sealed supplement?

20                   MR. HAZLEHURST:  Your Honor, I would note

21   for the record that when the plea agreement was

22   submitted, beyond what's stated in the written plea

23   agreement it was submitted with the understanding

24   that two cases charging the homicides to which Mr.

25   Adams is essentially pleading guilty here today.

15

1                THE COURT:  In counts five and eleven.

2                MR. HAZLEHURST:  Indeed, one in Baltimore

3       County, one in Baltimore City would ultimately be

4       dismissed as a result of the successful completion of

5       his obligations under the plea agreement.

6                THE COURT:  And they are pending state

7       charges, is that correct?

8                MR. HAZLEHURST:  Correct, Your Honor.

9                THE COURT:  Is that correct, Mr. Romano?

10               MR. ROMANO:  Yes, it is, Your Honor,

11      that's the government's understanding as well.

12               THE COURT:  That's an agreement reached

13      with the Baltimore County state attorney's office, is

14      that correct?

15               MR. ROMANO:  Correct.

16               THE COURT:  But it's not in the plea

17      agreement itself.

18               MR. ROMANO:  One of the homicides was in

19      the city and the other was in the county.

20               THE COURT:  All right.  Hold on one

21      second.

22               At some point in time, if this case

23      proceeds to trial and if this defendant testifies,

24      that additional information in addition to the plea

25      agreement will constitute Giglio material and be

1    provided to defense counsel, is that correct, Mr.

2    Romano?

3                    MR. ROMANO:  It certainly will, Your

4    Honor.

5                    THE COURT:  I'm signing an order

6    indicating that this order is sealing documents and

7    sealing the court proceeding.  The public docket

8    shall not reflect entry of this order or the

9    occurrence of the sealed proceeding.  That order is

10   being signed today.

11                   With that modification, Mr. Adams, does

12   this plea agreement and the sealed supplement, the

13   plea agreement, the attachment A, the statement of

14   facts and the sealed supplement set forth the

15   complete agreement between you and the government?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  Are you satisfied it sets

18   forth a complete agreement between your client and

19   the government, Mr. Hazlehurst?

20                   MR. HAZLEHURST:  I am, Your Honor.  With

21   that addition obviously.

22                   THE COURT:  Let me make sure you

23   understand the provisions there in the sealed

24   supplement, Mr. Adams.  You'll note that the sealed

25   supplement in paragraphs 1A and 1D refers to your

1    fully and truthfully cooperating and providing

2    information.  Do you see that there, in the sealed

3    supplement, starting at page 12, paragraph 1A, that

4    you shall fully and truthfully respond to all

5    questions put to you?  Do you see that there?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  1D, that you shall testify

8    fully and truthfully before grand juries and at any

9    trial, do you understand that?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Also, in paragraph two of the

12   sealed supplement, the government has indicated that

13   it will not use any information you provide against

14   you and will accord you immunity, but once again it's

15   predicated upon your fully and truthfully disclosing

16   information to the government; do you understand

17   that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you understand that if you

20   were to lie or withhold information that you should

21   disclose to the government, pursuant to paragraph

22   seven of this sealed supplement the government could

23   seek to have this agreement be declared in breach?

24   Do you understand that?

25             THE DEFENDANT:  Yes, sir.

1          THE COURT:  And the government could not

2     summarily just tell you you've breached the

3     agreement, but they would ask for a hearing before me

4     and I would determine whether or not you breached the

5     plea agreement.  The government would not have to

6     prove guilt beyond a reasonable doubt as they would

7     in the case itself, they would just have to prove by

8     a preponderance of the evidence that you had breached

9     the plea agreement; do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And if I had determined that

12    you had, under Fourth Circuit case law, and this

13    court sits in the Fourth Circuit, great latitude is

14    accorded to the government in the event of a breach

15    of a plea agreement, so that the government could

16    seek to enforce certain portions of the plea

17    agreement, even if you had breached it; do you

18    understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Meaning you would not

21    necessarily be permitted to withdraw your plea of

22    guilty if you were deemed to have breached the plea

23    agreement; do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And furthermore, paragraph

1    four of the sealed supplement reflects that the

2    government reserves the right to move for a downward

3    departure for your substantial assistance to the

4    government under Section 5(k)1.1 of the advisory

5    guidelines as well as 18 United States Code, Section

6    3553E.  Do you understand that?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  But that's strictly in the

9    government's discretion as to whether or not they

10   seek to move for a downward departure.  Do you

11   understand that?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  If they do move for a

14   downward departure, then Mr. Hazlehurst has reserved

15   the right to seek a greater downward departure for

16   you.  Do you understand that?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  And is a mandatory minimum

19   sentence, is there a mandatory minimum applicable in

20   this case absent a motion for a downward departure,

21   Mr. Romano?

22                   MR. ROMANO:  There's no mandatory

23   minimum, no, sir.

24                   THE COURT:  I just want to make sure if

25   that were the case as to the counts, that would mean

1    that would be very important to him if he did not

2    move.  Okay.

3              Do you understand that you would not

4    only, the government could not only, if you were to

5    breach the plea agreement, the government could not

6    only use information against you, Mr. Adams, but I

7    would not necessarily permit you to withdraw your

8    plea of guilty if you were deemed to have breached

9    the plea agreement.  Do you understand that?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Now, pursuant to the plea

12    agreement, do you understand that I'm not a party to

13    this agreement?

14              THE DEFENDANT:  Yes.

15              THE COURT:  And do you understand that

16    the terms of the plea agreement are merely

17    recommendations to the court?

18              THE DEFENDANT:  Yes.

19              THE COURT:  And do you understand that I

20    can reject these recommendations without permitting

21    you to withdraw your plea of guilty and could impose

22    a sentence that is more severe than you anticipate or

23    less severe than the government anticipates?  Do you

24    understand that?

25              THE DEFENDANT:  Yes.

1            THE COURT:  Has anyone in any way tried

2    to force you or threaten you to plead guilty in this

3    case, Mr. Adams?

4            THE DEFENDANT:  No, sir.

5            THE COURT:  Are you pleading guilty on

6    your own freely because you are, in fact, guilty of

7    the crimes charged in counts five and eleven of the

8    indictment?

9            THE DEFENDANT:  Yes, sir.

10            THE COURT:  Do you understand that the

11    offenses to which you're pleading guilty in counts

12    five and eleven, specifically murder in aid of

13    racketeering in violation of 18 United States Code,

14    Section 1959A, they are felony offenses?  Do you

15    understand that.

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  And do you understand that if

18    I accept your pleas of guilty this afternoon and

19    you're adjudged guilty of those offenses, that

20    adjudication will deprive you of certain valuable

21    civil rights?  Do you understand that?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  Your client is an American

24    citizen, correct, Mr. Hazlehurst?

25            MR. HAZLEHURST:  He is, Your Honor.

1          THE COURT:  But you'll lose the right to

2   vote, you lose the right to have a firearm, you lose

3   the right to have ammunition; do you understand that,

4   sir?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  You may be unable to keep

7   certain employment; do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And furthermore, you might be

10  unable to keep certain benefits such as public

11  housing or educational assistance loans; do you

12  understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And furthermore, if you were

15  to be convicted of another crime in the future, you

16  could receive a harsher sentence as a result of your

17  conviction in this case; do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And there may or may not be a

20  forfeiture; do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  As was noted in paragraph

23  three of the plea agreement, do you understand that

24  the maximum sentence provided by statute for this

25  offense is life or death, and a term of supervised

1    release of five years, and a fine of $250,000?  Do

2    you understand that.

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  And I would note that there

5    cannot be any maximum of death here in terms of this

6    defendant pleading guilty, he can't be pleading

7    guilty to a death eligible count, so we need to

8    clarify this.  The maximum penalty would be life in

9    prison under the statute, but he could not be

10   entering a plea of guilty to an offense to which the

11   government could potentially be the sentence of

12   death.

13                   MR. ROMANO:  We do, Your Honor, just for

14   further clarification when you asked if there was a

15   minimum mandatory.  The sentence here, absent any

16   5(k) or 3553E motion by the government, would have to

17   be life imprisonment, so there is no mandatory

18   minimum per se, but the penalty would be life

19   imprisonment.

20                   THE COURT:  Is that a mandatory life

21   sentence?

22                   MR. ROMANO:  It would be, yes, Your

23   Honor, absent the motion by the government.

24                   THE COURT:  I want to make sure you

25   understand that, Mr. Adams, that that mandatory

1    sentence does not apply because you're pleading

2    guilty and cooperating with the government; do you

3    understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  All right.  Now, but the

6    point is that under Section 3553E of Title 18, the

7    government must make a motion noting your substantial

8    assistance in order for that life penalty not to

9    apply; do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Is that correct, Mr. Romano?

12             MR. ROMANO:  That is correct, Your Honor.

13   I guess also for purposes of the record, with regard

14   to the court's question about the death penalty or

15   him being subjected to that penalty, for the record,

16   on November 4 of last year, Attorney General Eric

17   holder advised the United States Attorney that we

18   were authorized and directed not to seek the death

19   penalty, so the maximum penalty would be life, absent

20   a 3553E or a 5(k) motion.

21             THE COURT:  And there is case authority

22   which establishes that he cannot plead guilty to an

23   offense as to which he could potentially receive the

24   death penalty.  There's no way you can plead guilty

25   and receive the death penalty.

1          MR. ROMANO:  Thank you, Your Honor.

2          THE COURT:  All right.  So you understand

3     then the maximum penalty is life in prison,

4     supervised release of five years and a fine of

5     $250,000; do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And there would be a

8     mandatory life sentence because you're pleading

9     guilty to the charge of murder in aid of racketeering

10    in counts five and eleven, but presumably if you meet

11    all of your obligations the government will then move

12    for a downward departure, and obviously, Mr. Romano,

13    you'd have to move under 3553E of Title 18?

14         THE DEFENDANT:  That's correct.  And the

15    plea agreement contemplates both sections.

16         THE COURT:  And you must pay a $100

17    special assessment at the time of sentencing, Mr.

18    Adams, which as a practical matter means it's

19    deducted from your prison wages, no one's expecting

20    you to write a check; do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  I mentioned the matter of

23    supervised release after any incarceration.

24    Supervised release involves your compliance with

25    certain conditions set by the court and monitored by

1     the probation office.  Do you understand that if you

2     were to violate conditions of supervised release

3     after your prison sentence, you could be given

4     additional time in prison without any credit for time

5     already served?

6               THE DEFENDANT:  Yes.

7               THE COURT:  Are you satisfied then, Mr.

8     Hazlehurst, that your client understands all the

9     possible consequences of his plea of guilty?

10               MR. HAZLEHURST:  I am, Your Honor.

11               THE COURT:  Mr. Adams, are you satisfied

12     that you understand all the possible consequences of

13     your plea of guilty?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  Let me explain to you the

16     process here in federal court with respect to

17     sentencing.  There are two key Supreme Court opinions

18     that have been issued in the last seven years which

19     summarize the process as to sentencing in federal

20     court.

21               First of all, in the case of United

22     States versus Booker, over seven years ago, in

23     January of 2005, the Supreme Court of the United

24     States held that the federal sentencing guidelines

25     were constitutional, but held that they were

1    constitutional with the deletion of two particular

2    sections of those guidelines which had previously

3    rendered the guidelines mandatory.  And under the

4    approach adopted by the Supreme Court of the United

5    States in the Booker case, the Supreme Court noted

6    that the federal sentencing guidelines were rendered

7    effectively advisory as a result of its opinion and

8    that the guidelines were no longer mandatory.  But

9    the Supreme Court of the United States specifically

10   noted that federal judges, while not bound to apply

11   the guidelines, must consult the guidelines and take

12   them into account when imposing a sentence subject to

13   review by courts of appeals for unreasonableness.

14           The Supreme Court in the Booker case

15   noted factors under Title 18 of United States Code

16   that should be considered as well that I will be

17   looking at such as your personal history and

18   characteristics, the nature and circumstances of the

19   offense, whether or not you represent a threat to the

20   public, the sentences imposed upon similarly situated

21   individuals, that are a series of other factors I

22   will look at.

23           And then in the second of the two key

24   Supreme Court opinions in the last seven years, in

25   the case of Gall versus the United States, the

1  Supreme Court noted that the advisory guidelines are

2  the starting point in the analysis.  And essentially

3  the Supreme Court outlined a multi-step process

4  pursuant to which when you return for sentencing here

5  ultimately I will figure out what the guideline range

6  is, I will then consider other factors apart from the

7  guidelines and impose a sentence; and if my sentence

8  is outside of the advisory guideline range, I

9  indicate my reason for it being outside of the

10  guideline range.  Do you understand that, sir?

11         MR. HAZLEHURST:  Your Honor, if I may for

12  just one moment.

13         THE COURT:  Certainly.

14         (DISCUSSION OFF THE RECORD.)

15         MR. HAZLEHURST:  Your Honor, his question

16  was as to the process and, again, as to the court's

17  obligation to take the guidelines into account, and I

18  think he is satisfied as to my explanation.

19         THE COURT:  Do you understand as to that,

20  Mr. Adams?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And in paragraph five of the

23  plea agreement here you have noted that I'll be

24  taking the guidelines into consideration when I

25  impose a sentence.  Do you understand that, sir?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And you and Mr. Hazlehurst

3     have discussed the guidelines, is that correct?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  And do you understand that

6     pursuant to paragraph six of the plea agreement in

7     this case, it's agreed that there is a base offense

8     level of 43, and that the offenses to which you're

9     pleading guilty are specifically excluded for any

10    grouping rules.  Grouping rules have to do with being

11    sentenced together on two different charges, but

12    essentially you agree that there's a base offense

13    level of 43 in this case; do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Now, pursuant to paragraph 7

16    of the plea agreement, there is no agreement as to

17    your criminal history and that can expose you to

18    greater prison time; do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And in paragraph nine of the

21    plea agreement, essentially ultimately after you've

22    cooperated, once you return here for sentencing

23    ultimately, Mr. Adams, the government is going to

24    recommend a sentence within the applicable guideline

25    range, whatever that range is; do you understand

1      that?

2                 THE DEFENDANT:  Yes.

3                 THE COURT:  Now, do you understand that

4      I'll not be able to determine the advisory guideline

5      range in this case until after a presentence

6      investigation report has been completed by the U.S.

7      Probation Officer in this case, Mr. Larry Gagen is

8      here today, but in fact Miss Tracy Schrum will be the

9      U.S. Probation Officer.  Is that correct, Mr. Gagen?

10                THE PROBATION OFFICER:  That's correct,

11     Your Honor.

12                THE COURT:  And do you understand that

13     there will be a presentence investigation report

14     prepared by the probation office.  Let me explain to

15     you what will happen.  Ultimately you'll meet with

16     the probation officer, the probation officer will

17     prepare a presentence investigation report, and then

18     that report will initially come to the government and

19     to your lawyer, who will review it with you, and

20     either side can note any objections to it.  Do you

21     understand that?

22                THE DEFENDANT:  Yes, sir.

23                THE COURT:  And that's before I even see

24     it.  Do you understand that?

25                THE DEFENDANT:  Yes, sir.

```
 1                    THE COURT:  And ultimately the probation

 2     officer either will or will not make changes and then

 3     it comes to me.  Do you understand that?

 4                    THE DEFENDANT:  Yes, sir.

 5                    THE COURT:  And then ultimately, and you

 6     can make any objections you want and can challenge

 7     the reported facts and application of the guidelines,

 8     but ultimately the probation officer determines if

 9     there's any merit to those objections, and then it

10     comes to me; do you understand that?

11                    THE DEFENDANT:  Yes, sir.

12                    THE COURT:  And so do you understand that

13     the sentence imposed could be different from any

14     estimate which Mr. Hazlehurst has given you because

15     he doesn't know what I'm going to do because I don't

16     know what I'm going to do until I see the presentence

17     report?  Do you understand that?

18                    THE DEFENDANT:  Yes, sir.

19                    THE COURT:  Do you also understand that

20     because the guidelines are advisory that this court

21     has the authority to depart from the guidelines?  Do

22     you understand that?

23                    THE DEFENDANT:  Yes.

24                    THE COURT:  The guidelines give a range,

25     okay, but the guidelines are advisory; do you
```

1   understand that?

2                   THE DEFENDANT:  Yes.

3                   THE COURT:  All right.  And do you

4   understand that because they're advisory I can depart

5   from the guidelines and I can give a sentence greater

6   than the guidelines or perhaps less than the

7   guidelines.  I can give a sentence that's more severe

8   than you anticipate or it might be more lenient than

9   the government anticipates.  Do you understand that?

10                   THE DEFENDANT:  Yes, sir.

11                   THE COURT:  Do you also understand that

12   parole has been abolished in the federal system, Mr.

13   Adams?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  There is no parole in the

16   federal system.  For example, a 20 year sentence in

17   the state system might mean that you serve six years

18   maybe, seven years, and then you're released on

19   parole.  There's no parole in the federal system.  In

20   that example a 20 year sentence would be a 20 year

21   sentence absent some good time.  But there is no

22   parole.  Do you understand that?

23                   THE DEFENDANT:  Yes, sir.

24                   THE COURT:  And do you also understand

25   that you and the government have waived certain

1       rights of appeal in this case, and in paragraph six

2       of the sealed supplement essentially it's reflected

3       that there's certain waiver of appeal in this case

4       and essentially you reserve the right to appeal from

5       any sentence that exceeds 360 months which is 30

6       years, and the government reserves the right to

7       appeal any sentence that is below 360 months?  Do you

8       understand that?

9                   THE DEFENDANT:  Yes, sir.

10                  THE COURT:  What that means is is that

11      both, if I sentence you to exactly 30 years in

12      prison, both you and the government would be unable

13      to appeal it because that's exactly the sentence that

14      both of you, I don't see you've agreed upon, but

15      neither side would be able to appeal a sentence of

16      exactly 360 months; is that correct, Mr. Romano?

17                  MR. ROMANO:  Yes, sir.

18                  THE COURT:  Correct, Mr. Hazlehurst?

19                  MR. HAZLEHURST:  Yes, sir.

20                  THE COURT:  And you also waive rights

21      under what is known as the Freedom of Information Act

22      which is an act that permits American citizens to

23      seek information from government agencies, Mr. Adams.

24      Now that you're pleading guilty, you waive the right

25      to any further information about this case.  You've

34

1    had access to discovery through your attorney, but

2    now that you're pleading guilty you cannot seek

3    further information from the government by means of a

4    Freedom of Information Act request; do you understand

5    that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Now, the trial of this case

8    has been tentatively set right now for April of next

9    year along with your 20 co-defendants.  Do you

10   understand that you have a right to continue to plead

11   not guilty to any and all charges against you,

12   including counts five and eleven of the indictment,

13   and you would have the right to a trial by jury for

14   which 12 people would be selected as jurors?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And do you understand you'd

17   have the right to participate with Mr. Hazlehurst in

18   the selection of a jury in this case?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And do you understand that at

21   trial you'd be presumed to be innocent?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  And do you understand that

24   the government would have to prove your guilt beyond

25   a reasonable doubt?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And do you understand that

3     there would have to be a unanimous verdict of all 12

4     jurors before you could be convicted in this case?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Do you further understand

7     that you have the right to the assistance of your

8     attorney, Mr. Hazlehurst, for your defense, and the

9     right to see and hear all witnesses and to cross

10    examine all witnesses?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And do you further understand

13    on your own part you would have the right to decline

14    to testify until you voluntarily elected to testify

15    in your own defense?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Under the Fifth Amendment to

18    the U.S. Constitution, the government can't call you

19    as a witness; do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  But if you did go to trial

22    and if you did testify, you could be subject to

23    impeachment on cross examination and could be

24    questioned about any prior criminal record that you

25    have; do you understand that?

1                    THE DEFENDANT:  Yes, sir.

2                    THE COURT:  On the other hand, should you

3       decide to go to trial but not testify or put on any

4       evidence, do you understand that those facts could

5       not be used against you?

6                    THE DEFENDANT:  Yes, sir.

7                    THE COURT:  I will, in fact, tell the

8       jury that they should not consider in any way that

9       you did not testify, and I would explain to the jury

10      that the burden is always upon the government and

11      never shifts, and that there's never any requirement

12      that a defendant prove his innocence.  The government

13      must prove his guilt beyond a reasonable doubt.  Do

14      you understand that?

15                   THE DEFENDANT:  Yes, sir.

16                   THE COURT:  Do you also understand, Mr.

17      Adams, that you would have the right to the issuance

18      of subpoenas or the compulsory process to compel the

19      attendance of witnesses to testify in your defense?

20                   THE DEFENDANT:  Yes, sir.

21                   THE COURT:  Meaning it's not just the

22      government which can require people to come into the

23      courtroom.  You could give the names of any persons

24      whom you wanted to call to Mr. Hazlehurst, he would

25      give those names to Mr. Thompson, the deputy clerk of

1      court, who would see that subpoenas were issued, and

2      just as the government can compel people to come into

3      the courtroom, you could compel people to come into

4      the courtroom to be a witness for you.  Do you

5      understand that?

6                  THE DEFENDANT:  Yes, sir.

7                  THE COURT:  And if there was a trial in

8      this case and if you were found guilty, do you

9      understand that you could appeal both the verdict of

10     guilty by the jury as well as any sentence imposed in

11     the case, there would not be any limit to your rights

12     of appeal as there are now?  Do you understand that?

13                 THE DEFENDANT:  Yes, sir.

14                 THE COURT:  And do you further understand

15     that by entering this plea of guilty, if I accept

16     that plea in a few moments, there will be no trial

17     and you will have waived or given up your right to a

18     trial as well as all those other rights associated

19     with the trial as I've just described them?

20                 THE DEFENDANT:  Yes, sir.

21                 THE COURT:  Now, the charges to which

22     you're pleading guilty, counts five and eleven of the

23     indictment, are murder in aid of racketeering in

24     violation of 18 United States Code, Section 1959A,

25     and I would note that that's the charge against you

1    in count five, that on or about February 16, 2009, in

2    the State and District of Maryland, for the purpose

3    of gaining entrance to and maintaining the increasing

4    position in DMI, an enterprise engaged in

5    racketeering activity, that you did murder James

6    Flanary in violation of Maryland common law, and that

7    would be on or about February 16, 2009, and that's

8    the charge of murder in aid of racketeering.

9           And then count eleven charges that on or

10    about September 19, 2009, in the State and District

11    of Maryland, for the purpose of gaining entrance to

12    and maintaining the increasing position in DMI, an

13    enterprise engaged in racketeering activity, that you

14    did murder Walter Mielewski, M-I-E-L-E-W-S-K-I, in

15    violation of Maryland common law and the Maryland

16    code, and that would be on September 19, 2009.

17           With respect to the essential elements of

18    that offense, they're set forth in paragraph two of

19    the plea agreement, and paragraph two sets forth the

20    elements of both of those offenses.  The first, an

21    enterprise affecting interstate commerce existed;

22    second, that the enterprise was engaged in

23    racketeering activity; third, that you had or were

24    seeking a position in the enterprise; fourth, that

25    you committed the alleged crime of violence; and

1      fifth, that your general purpose in committing the

2      crime of violence was to maintain or increase your

3      position in the enterprise or in consideration for

4      the receipt of anything of value.

5                  Do you understand the basic elements of

6      the offense to which you're pleading guilty here this

7      afternoon as to counts five and eleven, Mr. Adams?

8                  THE DEFENDANT:  Yes, sir.

9                  THE COURT:  All right.  You may be seated

10     for a moment and I'll call upon Assistant United

11     States Attorney Chris Romano to summarize and make a

12     representation concerning the facts the government

13     would be prepared to prove at trial so as to

14     establish an independent factual basis for this plea.

15     And I would note that the factual basis for this plea

16     is also found in attachment A to the plea agreement

17     in this case.

18                 Mr. Romano.

19                 MR. ROMANO:  Thank you, Your Honor.

20                 Your Honor, I'm not going to read the

21     entire attachment A which the court has and which Mr.

22     Hazlehurst and his client have signed, but with

23     regard to summarizing attachment A and in connection

24     with count five which is the murder of James Flanary,

25     the government 's evidence, if put to its burden of

1    proof, would establish the following facts beyond a

2    reasonable doubt:  First, there was an enterprise

3    known as DMI or Dead Men, Incorporated which was

4    founded within the Maryland prison system by an

5    individual by the name of Perry Roark and others.

6              THE COURT:  Mr. Roark is a defendant in

7    this case, a co-defendant in this case.

8              MR. ROMANO:  That is correct.  He is one

9    of the defendants in this case.

10             THE COURT:  He's one of those defendants

11   as to whom the government may or may not be seeking

12   the death penalty, is that correct?

13             MR. ROMANO:  That's correct.

14             THE COURT:  And at present the government

15   has not made that determination and he in fact may be

16   subject to the death penalty, is that correct?

17             MR. ROMANO:  That is again accurate, Your

18   Honor.

19             With regard to the organization known as

20   DMI or Dead Men, Incorporated, they had established

21   units within a number of Maryland neighborhoods, and

22   each unit was comprised of various seat-holders who

23   had specific jobs within the unit.  Rank and file

24   members of the dime were referred to as dawgs, that's

25   D-A-W-G-S.  There were also senior leadership members

1    of DMI, specifically they were referred to as elders.

2    And Mr. Roark was responsible for the appointment of

3    elders as well as the other unit leaders which in the

4    hierarchy were known as captains, and then there were

5    other leadership positions as well.

6                With regard to the murder of Mr. Flanary,

7    which occurred on February 16 of 2009, there was a

8    meeting that had occurred at an another member of

9    DMI's residence, this individual being a woman by the

10   name of Nikki Cash.  At the time of that meeting in

11   February of 2009, Mr. Adams was present along with

12   other members of DMI, and the evidence would

13   establish that Mr. Adams was indeed a member of DMI

14   at that time.

15               While that meeting was taking place,

16   there was a telephone call that was received in which

17   a sympathizer of DMI, also known as a sym, had been

18   assaulted and robbed.  As a result of that, Mr. Adams

19   and other members of DMI left the meeting at Miss

20   Cash's house in an effort to locate and retaliate

21   against the person who had attacked the DMI

22   sympathizer.  However, they were unsuccessful in

23   locating and assaulting that individual.

24               Approximately two days later Mr. Adams

25   receive received a phone call from another member of

1    DMI who indicated that he had just located the person

2    who had attacked or assaulted the DMI sympathizer,

3    that individual being James Flanary.  Mr. Flanary had

4    been observed at a drug rehab facility on Hanover

5    Street within the confines of Baltimore City.  Mr.

6    Adams then conferred with another member of DMI who

7    held a leadership position and that person authorized

8    Mr. Adams to commit an assault on Mr. Flanary.  The

9    assault also had been previously authorized not just

10   by the immediate leader who was an elder, but also by

11   Perry Roark who was anointed by himself to be known

12   as the supreme commander of DMI.

13           Based on those orders from Perry Roark as

14   well as the elder, a man by the name of Brian

15   Mitchell, Mr. Adams then set out to locate and to

16   assault Mr. Flanary.  He was assisted in that effort

17   by an individual by the name of Michael Ferami who

18   was also known by the name of Skinny Pimp.  He is

19   also a defendant in this case.

20           Mr. Adams and Mr. Ferami and others then

21   located Mr. Flanary at the rehab facility.  Mr. Adams

22   secured a knife from Mr. Ferami and then proceeded to

23   stab Mr. Flanary.  The results of that assault and

24   stabbing resulted in the death of Mr. Flanary.

25           Mr. Adams' motive in perpetrating the

1        assault was to not only maintain but also to gain a

2        reputation among DMI members in order to elevate his

3        status within the DMI organization.

4                    That would be the factual basis in

5        support of the count five, that is, the murder of Mr.

6        Flanary.

7                    THE COURT:  All right.  Count five

8        relates to January 16, 2009.  And then count 11

9        relates to June 2, 2009.

10                   MR. ROMANO:  That's correct, Your Honor.

11       February 16.

12                   I may have misheard the court with regard

13       to count five, but that assault occurred on February

14       16, or that murder I should say occurred on February

15       16 of 2009.

16                   THE COURT:  I have attachment A referring

17       to the murder of James Flanary, parens, January 16,

18       2009 in the letter I'm looking at.

19                   MR. ROMANO:  Court's indulgence.

20                   Your Honor, I'm looking, and I'm not sure

21       if the court has the same agreement --

22                   THE COURT:  I'm looking at the one that

23       you have most recently given me that has the changes,

24       counts five and eleven of an indictment, and if you

25       want to approach the bench, my attachment A says the

1    murder of James Flanary, January 16, 2009.  The

2    statement of facts refers to --

3              MR. ROMANO:  I see what Your Honor is

4    referring to.  Right.  It's in the parenthetical

5    that's January 16.

6              THE COURT:  We need to take the original

7    and make sure that it's initialed by everybody before

8    we go it to count eleven.  Take the original.  Where

9    is the original letter?

10             Every one should basically initial that

11   so it should be February 16 and not January 16.  And

12   we'll have to make sure Mr. Adams initials that as

13   well, Mr. Hazlehurst.

14             MR. HAZLEHURST:  We will, Your Honor.

15             THE COURT:  The record will reflect that

16   Mr. Harding and Mr. Romano on behalf of the

17   government, Mr. Hazlehurst on behalf of the

18   defendant, and Mr. Adams himself, have initialed that

19   change on attachment A, page seven of government

20   exhibit 1.

21             MR. ROMANO:  And I've interlineated, Your

22   Honor, where it was January 16 to February 16, 2009.

23             THE COURT:  The body itself refers to mid

24   February of 2009, in the colloquy it's just that the

25   heading was incorrect.

 1              MR. ROMANO:  That's correct.

 2              Your Honor, actually count eleven, the

 3      factual basis in support of that appears beginning on

 4      page nine.  There are some additional information --

 5              THE COURT:  Again, my copy has it on page

 6      eight, the murder of Tony Geiger.

 7              MR. ROMANO:  I'm sorry, Your Honor.  But

 8      there was a murder of Tony Geiger, but the count to

 9      which Mr. Adams is pleading is count eleven, which if

10      Your Honor looks at the indictment, that references a

11      murder of an individual by the name of Walter

12      Mielewski as opposed to Mr. Geiger, which is under,

13      for the record, would be paragraph C and beginning at

14      page nine.

15              THE COURT:  As to, it says C, conspiracy

16      to murder Jeremy Ridgeway, slash, murders of Eugene

17      Chambers and Walter Mielewski.

18              MR. ROMANO:  Correct.  And that would be

19      in August and September of 2009.  And as the

20      indictment alleges, the murder of Mr. Mielewski

21      occurred on September 19 of 2009.

22              THE COURT:  Hold on for one second,

23      please.  But in pages eight and nine, section B,

24      there is information as to the murder of Tony Geiger

25      on June 2, 2009, and it represents that John Adams,

1          the defendant here before me, and Duane Shives,

2          S-H-I-V-E-S, killed Mr. Geiger, and that would

3          certainly be relevant conduct that I would be able to

4          consider based upon this statement of facts, correct,

5          Mr. Romano?

6                    MR. ROMANO:  That is absolutely correct.

7                    THE COURT:  Correct, Mr. Hazlehurst?

8                    MR. HAZLEHURST:  I don't disagree, Your

9          Honor.

10                    THE COURT:  That's relevant conduct I

11         will consider, that he's acknowledged killing this

12         individual as well.

13                    Go ahead, Mr. Romano.

14                    MR. ROMANO:  Thank you, Your Honor.

15                    Your Honor, with regard to count eleven

16         which is the murder of Walter Mielewski, and that,

17         the facts, again, are rather lengthy but appear on

18         pages nine and ten of the factual basis in support of

19         the plea.  Again, during the relevant time period,

20         which would have been in September and actually in

21         August and September of 2009, Mr. Adams, the

22         defendant, was a member of DMI.  He in that capacity

23         had been a member of DMI who was at one point

24         instructed by other members of DMI including a George

25         Trace, who was a co-defendant, that an individual by

47

1    the name of Jeremy Ridgeway, who was also a member of

2    DMI, was to be killed.  The reason for Mr. Ridgeway's

3    murder dealt with a dispute between Mr. Trace and Mr.

4    Ridgeway regarding drugs, and the quantity and

5    quality of drugs.  And Mr. Adams as a member of DMI

6    was directed to kill Mr. Ridgeway.

7         After that order had been given, and

8    while both Mr. Adams, Mr. Trace, who was a member of

9    DMI, and Mr. Ridgeway, who was a member of DMI, had

10   happened, Mr. Ridgeway had been involved in

11   altercations with Mr. Trace which in part also led to

12   the reason for the killing of Mr. Ridgeway.

13        On or about September 18 of 2009, another

14   individual by the name of Walter Mielewski then was

15   tasked with killing Mr. Ridgeway.  Mr. Mielewski went

16   to the location where he believed Mr. Ridgeway

17   resided and there he encountered an individual by the

18   name of Eugene Chambers.  Mr. Chambers was not

19   associated with DMI, nor had he been involved in any

20   dispute with Mr. Trace or any member of DMI.

21        When Mr. Mielewski encountered Mr. Eugene

22   Chambers, he mistakenly believed that Mr. Chambers

23   was in fact Jeremy Ridgeway, the person that Mr.

24   Adams was originally recruited, if you will, to kill.

25   Mr. Mielewski then shot and killed Eugene Chambers

1    believing Mr. Chambers to be Mr. Ridgeway.

2            When members of DMI learned that Walter

3    Mielewski had killed Eugene Chambers by mistake,

4    orders were then given to kill Walter Mielewski.

5            Mr. Adams confirmed with members of DMI

6    that Walter Mielewski was to be killed as a result of

7    his mistakenly killing Eugene Chambers.  Mr. Adams

8    received a firearm, specifically a 380 caliber

9    handgun from other members of DMI including Mr.

10   Trace.  Upon receiving that firearm and then

11   confirming with other members of DMI that Walter

12   Mielewski was to be killed, Mr. Adams shortly the

13   next day, in the early morning hours of September 19

14   of 2009, then went to a location where Mr. Mielewski

15   was residing, picked up Mr. Mielewski in Mr. Adams'

16   vehicle, drove him to a location in Baltimore County

17   where he then shot and killed Mr. Mielewski on the

18   orders from other members of DMI.

19           THE COURT:  Specifically, that the

20   addition in the plea agreement is that Kevin Bales,

21   B-A-L-E-S, is the one that gave Mr. Adams the

22   go-ahead to murder Mr. Mielewski, is that correct?

23           MR. ROMANO:  That is correct.  Mr. Bales,

24   the government's evidence will establish, was also a

25   number of DMI, held a leadership position superior to

1    Mr. Adams.  And, again, as Mr. Adams' motivation for

2    being a member of DMI not to only maintain, but to

3    also elevate both his status and his position within

4    DMI or Dead Men, Incorporated.

5                   As a result of those orders, Mr. Adams

6    carried them out.  Mr. Mielewski as I indicated was

7    taken to a location in Baltimore County after Mr.

8    Adams receive the order from Mr. Bales, and thereby

9    shot and killed Mr. Mielewski on February 19 of 2009.

10   So that would be the factual basis in support of

11   count eleven.

12                   THE COURT:  Thank you very much, Mr.

13   Romano.

14                   Are there any additions or modifications,

15   Mr. Hazlehurst?

16                   MR. HAZLEHURST:  No, Your Honor.

17                   THE COURT:  If you'll stand, please, Mr.

18   Adams.

19                   Is that an accurate summary of the facts

20   in this case?

21                   THE DEFENDANT:  Yes, sir.

22                   THE COURT:  Did you in fact commit the

23   crimes as summarized by the government?

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  Specifically, as charged in

1    count five of the indictment, did you in fact murder

2    James Flanary on or about February 16, 2009?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  And specifically as to count

5    eleven, did you in fact murder Walter Mielewski on or

6    about September 19, 2009?

7                    THE DEFENDANT:  Yes, sir.

8                    THE COURT:  All right.  Do you still wish

9    to plead guilty, sir?

10                   THE DEFENDANT:  Yes, sir.

11                   THE COURT:  Specifically then, Mr. Adams,

12   how do you plead to counts five and eleven of the

13   indictment, guilty or not guilty?

14                   THE DEFENDANT:  Guilty.

15                   THE COURT:  Mr. Hazlehurst, do you know

16   of any reason why the court should not accept?

17                   MR. HAZLEHURST:  I do not, Your Honor.

18                   THE COURT:  All right.  It is the finding

19   of this court in the case of John Adams, case number

20   11-0457, that the defendant is fully competent and

21   capable to enter informed pleas, and the defendant is

22   aware of the nature of the charges and the relevant

23   consequences of his pleas of guilty as to both of

24   these charges.

25                   I further find that the defendant is

1    aware of the nature of the charges and the relevant

2    consequences of his pleas of guilty, and I find that

3    his pleas of guilty on the advice of competent

4    counsel with whose services he is satisfied are

5    knowing and voluntary pleas supported by independent

6    bases in fact sustaining each of the essential

7    elements of the offenses charged.  The pleas of

8    guilty are to be accepted and the defendant is now

9    adjudged guilty of the offenses set forth in counts

10   five and eleven of the indictment, specifically

11   murder in aid of racketeering in violation of 18

12   United States Code, Section 1959A.

13           Mr. Adams, a written presentence

14   investigation report will be prepared by the U.S.

15   Probation Officer in this case, Miss Tracy Schrum, to

16   assist the court in sentencing, and you'll be asked

17   to provide information for that report, and your

18   attorney, Mr. Hazlehurst, will be with you when you

19   meet with the probation officer, and I'll permit both

20   you and Mr. Hazlehurst to read the presentence report

21   and to file any objections to it before your

22   sentencing hearing.  And I will afford both you and

23   Mr. Hazlehurst an opportunity to speak on your behalf

24   at the sentencing hearing when you return here for

25   sentencing.  So I will refer you to the U.S.

1      Probation Office for a presentence investigation and

2      report.

3                  I am going to initially schedule this

4      matter in for sentencing for Friday, September 21 of

5      this year, but obviously this may be delayed

6      depending on the status of the trial.  But if the

7      lawyers would make themselves available.  Is that

8      agreeable to you, Mr. Romano and Mr. Harding?

9                  MR. ROMANO:  Yes, it is, Your Honor.

10                 September 27?

11                 THE COURT:  Friday, September 21.  And

12     obviously that sentencing may be delayed.  And the

13     defendant is not, obviously not a candidate for

14     release under 3143A of Title 18, and is not to be

15     released.  This defendant is now in federal custody,

16     as a matter of fact, is that correct?

17                 MR. ROMANO:  He is, Your Honor.

18                 THE COURT:  Mr. Adams, whatever the

19     sentence is in this case, you're getting credit for

20     time served in federal custody, each day you're in

21     federal custody now; do you understand that, sir?

22                 THE DEFENDANT:  Yes, sir.

23                 THE COURT:  So you're already serving a

24     federal sentence, whenever that began.

25                 Let me go over the sentencing order here.

1    Sentencing right now is going to be scheduled for

2    Friday, September 21, but obviously may be delayed.

3    If either side desires to call any witnesses or

4    submit a sentencing memorandum, you should do so by

5    September 7.  Opposition will be filed by September

6    14.  The initial presentence investigation report

7    will be due on or before April 23.  Any objections by

8    May 1.  And the final copy to be by May 14.  But all

9    these dates are subject to modification regarding the

10   status of this matter as this case may or may not

11   proceed to trial.

12              MR. ROMANO:  Do you want to give us a

13   time, Your Honor, or just put the date on there?

14              THE DEFENDANT:  For Friday, September 21.

15   I'm sorry.  Three o'clock p.m.  I'm sorry.  Friday,

16   September 31, and three o'clock p.m.

17              MR. ROMANO:  We'll certainly notify the

18   court as time gets closer.  Thank you.

19              THE COURT:  Is there anything further

20   from the point of view of the government, Mr. Romano?

21              MR. ROMANO:  No, Your Honor, there isn't.

22   Thank you for your patience.

23              THE COURT:  Is there anything further

24   from the point of view of the defense, Mr.

25   Hazlehurst?

```
 1                    MR. HAZLEHURST:  Your Honor, I believe

 2         that the court has already signed the order regarding

 3         the sealing of documents, but I did ask specifically

 4         for the sealing of the plea agreement as well as the

 5         court sentencing order.

 6                    THE COURT:  I've signed an order today,

 7         regular sentencing order, the plea agreement, it's

 8         all sealed.  The public docket will not reflect

 9         filing of sealed documents, and in fact, they do not,

10         correct, Mr. Thompson?  There's nothing in the record

11         that -- we have got this thing sealed tight and it

12         will remain so, so all you need to do is to cooperate

13         with your lawyer.  This case will proceed.

14                    Anything further from the point of view

15         of the government?

16                    MR. ROMANO:  No, Your Honor.  Thank you.

17                    THE COURT:  From the defense?

18                    MR. HAZLEHURST:  No, Your Honor.  Thank

19         you.

20                    THE COURT:  Thank you all very much.

21                    (HEARING CONCLUDED.)

22

23

24

25
```

55

1

2          I certify that the foregoing is a correct

3     transcript from the record of proceedings in the

4     above-entitled matter.

5

6                         s/Anthony Rolland

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25